UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


Joshua H. White


          v.                              Civil No. 08-cv-121-JL


Kimberly Marsh, Director,
New Hampshire State Prison
Sex Offender Program, et al.


**O R D E R**


        Before the Court is Joshua White's petition for a writ of

habeas corpus (document no. 1).  The matter is before me for

preliminary review to determine whether or not the claims raised

in the petition are facially valid and may proceed.  See Rule 4

of the Rules Governing Section 2254 cases in the United States

District Courts; United States District Court District of New

Hampshire Local Rule ("LR") 4.3(d)(2) (authorizing magistrate

judge to preliminarily review pro se prisoner filings pursuant to

28 U.S.C. § 1915A).

Standard of Review

        Under this Court's local rules, when an incarcerated

plaintiff commences an action pro se and in forma pauperis, the

magistrate judge is directed to conduct a preliminary review.  LR

4.3(d)(2).  In conducting the preliminary review, the Court
construes pro se pleadings liberally, however inartfully pleaded.
See Erickson v. Pardus, ___ U.S. ___, 127 S. Ct. 2197, 2200
(2007) (following Estelle v. Gamble, 429 U.S. 97, 106 (1976) and
Haines v. Kerner, 404 U.S. 519, 520-21 (1972) to construe pro se
pleadings liberally in favor of the pro se party).  "The policy
behind affording pro se plaintiffs liberal interpretation is that
if they present sufficient facts, the court may intuit the
correct cause of action, even if it was imperfectly pled."  See
Castro v. United States, 540 U.S. 375, 381 (2003) (noting that
courts may construe pro se pleadings so as to avoid
inappropriately stringent rules and unnecessary dismissals of
claims); Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997).
All of the factual assertions made by a pro se plaintiff and
inferences reasonably drawn therefrom must be accepted as true.
See id.  This review ensures that pro se pleadings are given fair
and meaningful consideration.

Background

     On August 15, 2005, Joshua White pleaded guilty pursuant to
a plea agreement, and was sentenced to 3-6 years in prison on a
theft charge, and a concurrent 3 ½ – 7 year sentence for

felonious sexual assault, as well as additional consecutive suspended prison sentences.  White alleges that he decided to plead guilty on the advice of his attorney, who told him that, without a plea agreement, he was facing more than forty-two years in prison.  Under the terms of the sentence imposed pursuant to the plea agreement, White's minimum parole date is September 6, 2008, and his maximum sentence expiration date is March 20, 2012.

On December 22, 2005, after being evaluated for rehabilitative programming in the prison, Ruth Kevghas, a therapist in the prison's sex offender treatment program ("SOP"), recommended that White participate in the prison's 18-month long intensive sex offender treatment program.  As grounds for this recommendation, Kevghas cited White's admission to his offense, minimization of his criminal conduct by blaming his intoxication at the time of the offense, extensive drug and alcohol history, uncertainty about prior uncharged sexual misconduct, childhood physical and sexual abuse, an unstable family life, and his criminal history.  Additionally, Kevghas referred to White's mental health assessment, which noted depressive symptoms, including, among others, self-deprecation and occasional suicidal ideation, and a history of psychological hospitalizations.

Kevghas' recommendation that White complete the intensive treatment program was approved by Dan Millis, Acting Director of the SOP, on January 10, 2006.

On July 9, 2007, White filed a written complaint with SOP Director Kimberly Marsh, explaining that he disagreed with Kevghas' December 2005 recommendation for treatment.  White requested to be re-evaluated and considered for a less intensive 6-month treatment program on two grounds: (1) that Kevghas' report contained inaccurate statements, and (2) the fact that, during his incarceration, White received documentation of DNA evidence in his criminal case that, he asserts, tends to demonstrate that he did not commit the offense charged.[1]  White expressed his concern that he was within seven months of his minimum parole date, and would therefore like to be placed in a program that could be finished in six months.

_____

[1]White submits, with his petition, documentation indicating that DNA samples taken from the underwear, bra, shorts, and shirt of the victim in his case did not contain seminal material. Seminal material was found on the victim's bedspread, but laboratory testing revealed that the DNA in that sample did not come from White.  White alleges that although this information was given to his attorney prior to his guilty plea, he was unaware of it until after he pleaded guilty and started serving his prison sentence.

4

On July 10, 2007, White submitted an Inmate Request slip to
Marsh reiterating his complaints about Kevghas' report and her
treatment recommendation.  On July 11, 2007, Marsh responded to
White, indicating that Kevghas' treatment recommendation was
based on many factors, including White's tendency to minimize and
deflect responsibility for his offense.  Marsh pointed to White's
accusations of inaccuracies in Kevghas' report as further
evidence of minimization and deflection, and indicated that such
behavior only served to reinforce Kevghas' conclusion that White
is in need of the eighteen month intensive treatment program.

White now requests that this Court: (a) order White's
release on his minimum parole date due to the DNA evidence, (b)
order Kevghas' report to be withdrawn, (c) order that White be
re-evaluated for a six month treatment program, and (d) order
White's placement in a six month treatment program, rather than
the eighteen month program that has been recommended for him.

<u>Discussion</u>

I.   <u>Claims Seeking to Challenge the Prison's Report and
     Treatment Recommendations</u>

To the extent that White challenges the prison's treatment
recommendations or evaluations, he seeks to assert claims
challenging the conditions of his confinement.  Such claims must

5

be brought by filing a separate civil rights action under 42
U.S.C. § 1983.  These claims are not properly raised in a habeas
petition, as habeas relief is only available to challenge the
fact or length of an inmate's confinement.  <u>Preiser v. Rodriquez</u>,
411 U.S. 475, 489–99 (1973); <u>Wolff v. McDonnell</u>, 418 U.S. 539,
554 (1974).  Here, the propriety of a report or treatment
recommendation, while it may have bearing on White's chances of
obtaining parole, and therefore on the length of his actual
confinement, is not a challenge to his conviction or sentence.
Accordingly, I will not consider the claims challenging the
prison's production of a report and recommendations for treatment
as part of this habeas action.  White is free to refile the
claims in a separate § 1983 action.

II.  <u>Claims Seeking Release from Detention</u>

White requests that this Court order his immediate release
from custody based on DNA reports which, he alleges, prove that
he is not the person who committed the felonious sexual assault
to which he pleaded guilty.  This appears to be a challenge to
the validity of his guilty plea, and thus a challenge to his
confinement pursuant to that plea.  White states specifically,
however, that he "is not asking this court to withdraw this

6

plea."  Instead, he asks this Court to simply find that he should be released based on DNA evidence showing that the wrong person was convicted of his incarcerating offense.

Whether or not White intends it as such, this is, in fact, a challenge to the validity of his criminal conviction and sentence for felonious sexual assault.  Such a claim is cognizable in a federal habeas action.  <u>See</u> 28 U.S.C. § 2254(a).[2]  Here, White claims that he pleaded guilty to an offense he was not actually guilty of, and that he did so because, at the time of his plea, he was unaware of exculpatory evidence that tends to prove his innocence.  Construed liberally, I find that White's petition can be read to allege claims of actual innocence, ineffective assistance of counsel in violation of the Sixth and Fourteenth Amendments, and a plea that was not knowingly and voluntarily entered into by petitioner, in violation of the Sixth and Fourteenth Amendments.  All of these potential claims are

---

[2]Section 2254(a) states:

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

constitutional challenges to White's conviction and sentence, and, therefore, to his resulting incarceration.  At this time, however, White has not sufficiently clarified what claims he intends to raise in this petition.  As a preliminary matter, I order White to amend his petition to state, with specificity, what claims he intends to raise, including the federal nature of those claims.

Further, as required by the federal habeas statute, White must demonstrate that he is both in custody pursuant to the challenged conviction, and that he has fully exhausted his state remedies by providing the state courts with the opportunity to correct the constitutional errors alleged.  Absent such a showing, the petition fails, on its face, to state a valid claim upon which relief might be granted.  Accordingly, I will give White the opportunity to amend his petition, not only to clarify his claims, but to demonstrate that he has fully exhausted each of those claims in the state courts.[3]

A.  Exhaustion

To be eligible for habeas relief, White must show that he has exhausted all of his state court remedies, or that he is

---

[3]I find that White's current petition adequately alleges that he is in custody pursuant to the challenged conviction.

8

excused from exhausting those remedies because of an absence of available or effective state corrective processes.  See 28 U.S.C. § 2254(a) & (b); see also Adelson v. DiPaola, 131 F.3d 259, 261 (1st Cir. 1997) (citing authority to explain the exhaustion principle).

A petitioner's remedies in New Hampshire are exhausted when the State's highest court has had an opportunity to rule on the petitioner's claims.  See Lanigan v. Maloney, 853 F.2d 40, 42 (1st Cir. 1988) ("habeas corpus petitioner must have presented the substance of his federal constitutional claim[s] to the state appellate courts so that the state had the first chance to correct the claimed constitutional error"); see also Picard v. Connor, 404 U.S. 270, 275 (1971) (requiring petitioner to have fairly presented the federal nature of his claims to the State courts to give them the first opportunity to remedy the claimed constitutional error).  "In order to exhaust a claim, the petitioner must 'present the federal claim fairly and recognizably' to the state courts, meaning that he 'must show that he tendered his federal claim in such a way as to make it probable that a reasonable jurist would have been alerted to the existence of the federal question.'"  Clements v. Maloney, 485

9

F.3d 158, 162 (1st Cir. 2007) (quoting <u>Casella v. Clemons</u>, 207
F.3d 18, 20 (1st Cir. 2000) (internal citations omitted)).
"[T]he exhaustion principle holds, in general, that a federal
court will not entertain an application for habeas relief unless
the petitioner first has fully exhausted his state remedies in
respect to <u>each and every claim</u> contained within the
application." <u>Adelson</u>, 131 F.3d at 261 (emphasis added).

In order to satisfy the requirement to "fairly present" his
federal claim to the State courts, a petitioner must have
presented the claim to the State courts "in such a way that 'a
reasonable jurist' would have recognized 'the existence of the
federal question.'" <u>Josselyn v. Dennehy</u>, 475 F.3d 1, 3 (1st Cir.
2007) (quoting <u>Casella</u>, 207 F.3d at 20). A petitioner may fairly
present a claim by: (1) citing a provision of the federal
constitution, (2) presenting a federal constitutional claim in a
manner that fairly alerts the State court to the federal nature
of the claim, (3) citing federal constitutional precedents, (4)
claiming violation of a right specifically protected in the
federal constitution, or, in some circumstances, (5) citing to
State court decisions that rely on federal law or articulation of
a state claim that is indistinguishable from one arising under

10

federal law.  Clements, 485 F.3d at 162 (citing Gagne v. Fair, 835 F.2d 6, 7 (1st Cir. 1987) and Nadworny v. Fair, 872 F.2d 1093, 1099–1100 (1st Cir. 1989)); cf. Martens v. Shannon, 836 F.2d 715, 717 (1st Cir. 1988) (finding that simply reciting facts underlying a State claim, where those facts might support either a state or federal claim, without more, is clearly inadequate to constitute fair presentation of a federal claim to State court).

    B.   Stay

As White does not appear to have exhausted his claims, including the federal nature of those claims, in the State courts, I will allow him the opportunity to return to the State court to exhaust those claims.  If White notifies this Court that he intends to return to the State courts to exhaust his federal claims, I will direct that this matter be stayed in order to allow White to return to the State courts to complete exhaustion of his claims.

## Conclusion

If White intends to return to the State courts to exhaust his unexhausted claims, he is directed to so notify this Court, and also to commence his State court proceedings, within thirty days of the date of this Order.  Upon receipt of such a notice,

11

this matter will be stayed.  If the matter is stayed, White must notify this Court, in writing, of the status of the State court proceedings every ninety days.

When all of White's claims have been exhausted, he is directed to so notify this Court, and to amend his petition to demonstrate exhaustion of his claims within thirty days of the date that exhaustion is complete.  To satisfy this Order, White must provide this Court with complete copies of documents filed in the New Hampshire Superior Courts and the New Hampshire Supreme Court, showing that each of the claims, including the federal nature of those claims, has been raised and exhausted. White should also provide this Court with complete copies of any orders or opinions issued by the State courts relative to these matters.

Should White fail to amend his complaint to demonstrate that he has exhausted his State court remedies for each of the grounds presented, or otherwise fail to comply with this Order,

the petition may be dismissed for failure to demonstrate exhaustion.[4]  <u>See</u> 28 U.S.C. § 2254(b).

**SO ORDERED.**

_____
James R. Muirhead
United States Magistrate Judge

Date:     June 19, 2008

cc:       Joshua Hall White, pro se

---

[4]If this petition were to be dismissed for failing to demonstrate exhaustion, the dismissal would be without prejudice as it would be procedural and not based on the merits of White's claims.  <u>See</u> <u>Slack v. McDaniel</u>, 529 U.S. 473 (2000).

13